OPINION
{¶ 1} Plaintiffs-Appellants, Mary Reprogle and her husband Gregory Reprogle (collectively "Appellants"), appeal a decision by the Shelby County Common Pleas Court granting Defendants-Appellees', The Pub, Inc., Emerson Electric Co. Health Care Plan, and Coresource, Inc. ("The Pub"), motion for summary judgment with respect to Appellants' claims of personal injuries and loss of consortium incurred after a slip-and-fall accident at The Pub. Because Appellants' allegations that the patch of ice causing the fall was not a natural accumulation is speculative and not supported by the evidence before the court, the trial court did not err in granting The Pub's motion for summary judgment.
 {¶ 2} Facts and procedural history pertinent to issues raised on appeal are as follows. On February 8, 2000, Mary Reprogle ordered a carryout pizza from The Pub. After picking up the pizza, Mary exited The Pub and subsequently slipped and fell near a support pole of the overhead awning. After falling, Mary realized that she had slipped on an approximately two-foot diameter patch of ice.
 {¶ 3} Evidence reveals that snow was present in the bushes and on the ground in front of the bushes surrounding The Pub's exit, which are in near proximity to the location of the accident. Moreover, climatological evidence indicates that the average temperature on the day of the accident was twenty-five degrees.
 {¶ 4} On May 31, 2001, Appellants filed a claim for personal injuries and loss of consortium as a result of the fall, claiming that The Pub was negligent in maintaining the walkway and for failing to adequately warn of the dangerous conditions. In response, The Pub claimed that the proximate cause of the injuries resulted from a natural accumulation of ice, thus absolving it from liability. Based upon these contentions, The Pub moved for summary judgment on April 4, 2002. In reply, Appellants averred that the accumulation of ice was not a natural occurrence but, instead, resulted from a defective spouting and drainage system beneath the awning of the building.
 {¶ 5} On May 3, 2002, the trial court granted The Pub's motion for summary judgment, finding that the ice constituted a natural accumulation and was an open and obvious condition. Following the trial court's determination, Appellants appealed, asserting the following single assignment of error for our review: "The trial court erred by granting summary judgment in that reasonable minds could conclude that appellants fall was the result of an unnatural accumulation of ice of which she had no knowledge or warning."
 {¶ 6} At the outset, we note that a court may not grant a motion for summary judgment unless the record demonstrates: 1) that no genuine issue of material fact remains to be litigated; 2) that the moving party is entitled to judgment as a matter of law, and; 3) that, after construing the evidence most strongly in the nonmovant's favor, reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made.[1] In ruling on a summary judgment motion, the trial court is not permitted to weigh evidence or choose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmovant.[2] Moreover, once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the nonmoving party to show why summary judgment in favor of the moving party should not be had.[3] In addition, appellate review of summary judgment determinations is conducted on a de novo basis;[4] therefore, this Court considers the motion independently and without deference to the trial court's findings.[5]
 {¶ 7} To avoid summary judgment in a negligence action, "a plaintiff must show the existence of a duty, a breach of that duty, and an injury proximately resulting therefrom."[6] The law in Ohio is well established that an owner or occupier of land owes no duty to business invitees to remove natural accumulations of ice and snow from sidewalks on the premises or to warn of the dangers associated therewith.[7] The underlying rationale of this is that "everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by natural accumulations of ice and snow."[8]
 {¶ 8} In this case, Appellants maintain that the accumulation of ice at The Pub was not a natural occurrence but, instead, was created by a faulty spouting and drainage system attached to the overhead awning that was known to exist by The Pub's owner. Appellants thus assert that a question of material fact exists as to whether the ice was a natural accumulation. We disagree.
 {¶ 9} The only testimony in relation to the drainage system came from Dwight Myer, The Pub's owner. During deposition, he stated that the spouting and drainage system were effective. He further testified, however, that sometimes water may drip from the awning "here and there", specifically between the doors and at the corners. Appellants suggest that the Eighth District Appellate Court case Tyrrell v. InvestmentAssociates, Inc.[9] is analogous to the facts as elicited from Myer. Therein, the court found that an accumulation of ice under a dripping awning was not a naturally occurring accumulation, which presented a jury question as to whether the shop owner failed to exercise reasonable care for customer safety.[10]
 {¶ 10} However, we find Tyrrell distinguishable from the facts of this case. In Tyrrell, there was evidence elicited from the store employees that the dripping awning periodically caused icy conditions to exist.[11] On the other hand, in this case, there is no evidence that the occasional drips from the awning had ever caused ice to form or that it was of such a nature to cause a two-foot in diameter patch of ice. Furthermore, no evidence suggests that the drainage system underneath the awning was faulty or leaking on the date of the incident herein, as Appellants contend. Accordingly, Appellants' contention that the ice was not a natural accumulation is mere speculation in light of the facts in evidence, i.e., the weather conditions on the day of the accident and the surrounding accumulations of snow.
 {¶ 11} "Unsupported allegations * * * do not suffice to necessitate the denial of summary judgment."[12] The principal function of summary judgment is to move beyond mere allegations and to analyze the evidence to ascertain whether an actual need for trial exists.[13] Moreover, a motion for summary judgment "forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial."[14] A potential inference is not enough to withstand a motion for summary judgment.[15]
 {¶ 12} While Appellants theorize that the ice was formed by water dripping from a faulty drainage system, thus creating an unnatural accumulation, there was no evidence that the ice was formed in such a manner. Accordingly, on the evidence presented, Appellants have not met their burden to produce evidence supporting that The Pub owed a duty to mediate the icy conditions and we have no choice but to affirm the trial court's grant of summary judgment.[16] Appellants' assignment of error is hereby overruled.
 {¶ 13} Having found no error prejudicial to Appellants herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
Judgment affirmed.
SHAW, P.J., and BRYANT, J., concur.
[1] Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995),73 Ohio St.3d 679, 686-87.
[2] Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7.
[3] Civ.R. 56(E); Weithman v. Weithman (June 28, 2002), Crawford App. No. 3-02-08, 2002-Ohio-3400, at ¶ 12.
[4] Griner v. Minster Bd. of Edn. (1998), 128 Ohio App.3d 425,430.
[5] J.A. Industries, Inc. v. All American Plastics, Inc. (1999),133 Ohio App.3d 76, 82.
[6] Walters v. Middletown Properties Co. (July 22, 2002), Butler App. No. CA2001-10-249, 2002-Ohio-3730, at ¶ 11, quoting Texler v. D.O.Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677,680.
[7] Brinkman v. Ross (1993), 68 Ohio St.3d 82, 83, 1993-Ohio-72.
[8] Id. at 84.
[9] (1984), 16 Ohio App.3d 47.
[10] Id. at 49.
[11] Id.
[12] Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66.
[13] Id. (emphasis added).
[14] Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus.
[15] Id. at 112.
[16] Cf. Parker v. Cattano (June 19, 1981), Erie App. No. E-81-4.