OPINION *Page 2 
{¶ 1} Plaintiffs-Appellants Wayne and Anne McCoy ("the McCoys") appeal from the October 1, 2008 Judgment Entry of the Court of Common Pleas, Defiance County, Ohio granting summary judgment in favor of Defendants-Appellees Michael K. Murray ("Murray") and Nationwide Insurance Company ("Nationwide").
 {¶ 2} This case arises out of facts which are undisputed by the parties. On October 4, 2005 Murray was driving his vehicle on State Route 15 in a rural area of Defiance County, Ohio. While driving, Murray suddenly lost vision and consciousness and his vehicle left the highway. Murray then continued some distance through a cornfield before his vehicle crashed into the McCoys' parked vehicle. The McCoys' parked vehicle was pushed, by Murray's vehicle, into the McCoys' home, through an exterior wall into the kitchen, where Wayne McCoy was apparently injured.
 {¶ 3} On September 28, 2007 the McCoys filed a complaint against Murray and Nationwide. In their complaint, the McCoys requested money damages, uninsured/underinsured benefits, medical payments, declaratory judgment, interest, and court costs. The monetary damages were requested based on Wayne McCoy's injuries and Anne McCoy's loss of consortium. The *Page 3 
insurance benefits were requested from Nationwide, the McCoys' uninsured/underinsured motorists coverage insurer.
 {¶ 4} Murray filed an answer on October 19, 2007 asserting numerous defenses, including the defense of sudden medical emergency. On May 31, 2008 Murray filed for summary judgment based on the theory of sudden medical emergency. On June 13, 2008 Nationwide also filed a motion for summary judgment.
 {¶ 5} On July 15, 2008 the McCoys filed a brief in opposition to the defendants' motions for summary judgment. Murray filed a reply on August 22, 2008.
 {¶ 6} On September 10, 2008 the trial court held a hearing on the motion for summary judgment. The trial court granted summary judgment in favor of Murray and Nationwide on October 1, 2008 on the theory of sudden medical emergency.
 {¶ 7} The McCoys now appeal, asserting one assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT WAS INCORRECT TO GRANT SUMMARY JUDGMENT ON THE SUDDEN MEDICAL EMERGENCY DEFENSE WHEN THE DEFENDANT'S RECORDS SHOW CHEST PAINS DEVELOPING A YEAR AND A HALF PRIOR TO THE ACCIDENT, THE DEFENDANT'S FAILURE TO SEEK TREATMENT FOR THOSE CHEST PAINS, AND A DOCUMENTED HISTORY OF NON-COMPLIANCE WITH TREATMENT FOR OTHER HEART RELATED CONDITIONS. *Page 4 
 {¶ 8} In their sole assignment of error, the McCoys argue that the trial court erred in granting summary judgment in favor of Murray based on the defense of a sudden medical emergency.
 {¶ 9} An appellate court reviews a grant of summary judgment independently, and without any deference to the trial court.Conley-Slowinski v. Superior Spinning Stamping Co. (1998),128 Ohio App.3d 360, 363, 714 N.E.2d 991. The standard of review for a grant of summary judgment is de novo. Hasenfratz v. Warnement 3rd Dist. No. 1-06-03, 2006-Ohio-2797 citing Lorain Nat'l. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 572 N.E.2d 198.
 {¶ 10} A grant of summary judgment will be affirmed only when the requirements of Civ. R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C); see Horton v. Harwich Chem. Corp. (1995), 73 Ohio St.3d 679,653 N.E.2d 1196, 1995-Ohio-286, paragraph three of the syllabus. Additionally, Civ. R. 56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as *Page 5 
to any material fact and that the moving party is entitled to judgment as a matter of law.
 {¶ 11} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996),75 Ohio St.3d 280, 292, 662 N.E.2d 264, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ. R. 56(E).
 {¶ 12} In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7,663 N.E.2d 653.
 {¶ 13} In the present case, the McCoys argue that the trial court erred in granting summary judgment in favor of Murray based on the sudden medical emergency defense. The defense of sudden medical emergency was initially *Page 6 
stated in Ohio in Lehman v. Haynam (1956), 164 Ohio St. 595,133 N.E.2d 97, and was subsequently clarified in Roman v. Estate of Gobbo,99 Ohio St.3d 260, 791 N.E.2d 422, 2003-Ohio-3655. The rule articulated by the Ohio Supreme Court is that unconsciousness is a defense against a claim of negligence as follows:
 an operator of a motor vehicle who, while driving, becomes suddenly stricken by a fainting spell or loses consciousness from an unforeseen cause, and is unable to control the vehicle, is not chargeable with negligence or gross negligence. Stated differently, fainting or momentary loss of consciousness while driving is a complete defense to an action based on negligence (and a fortiori to an action based on gross negligence) if such loss of consciousness was not foreseeable.
Roman, 99 Ohio St.3d at 266 quoting Lehman, 164 Ohio St. at 599-600. TheRoman Court also rearticulated that the party asserting the sudden medical emergency defense bears the burden of proof with respect to the defense. Roman, 99 Ohio St.3d at 273 quoting Lehman, 164 Ohio St. 595
at paragraph three of syllabus. Therefore, Murray had the burden of proving both unconsciousness and that the unconsciousness was not foreseeable.
 {¶ 14} In the instant case, the McCoys do not dispute that Murray lost consciousness while driving due to cardiac arrhythmia. Instead, the McCoys argue that Murray's loss of consciousness was foreseeable. In considering foreseeability, the Roman Court noted that "the foreseeability inquiry in cases in which a defendant raises the defense of sudden medical emergency frequently amounts to a consideration by the factfinder of whether the defendant driver *Page 7 
should have been driving at all." Roman, 99 Ohio St.3d at 271-272. To qualify for the defense, the defendant must prove by a preponderance of the evidence that he had no reason to anticipate or foresee the sudden loss of consciousness. Dunlap v. W.L. Logan Trucking Co.161 Ohio App.3d 51, 67, 829 N.E.2d 356, 2005-Ohio-2386 citing Lehman,164 Ohio St. at 600.
 {¶ 15} Moreover, the Roman Court clarified the foreseeability issue as follows:
 an automobile driver who suddenly and quite unexpectedly suffers a heart attack does not become negligent when he loses control of his car and drives it in a manner which would otherwise be unreasonable; but one who knows that he is subject to such attacks may be negligent in driving at all.
Roman, 99 Ohio St.3d at 272.
 {¶ 16} In the present case, Murray submitted several affidavits with his motion for summary judgment. Specifically, Murray submitted the affidavit of Dr. Samer Obri, his physician since 2002 whose affidavit provided, in pertinent part, as follows:
 4. * * * Prior to October 4, 2005, Michael Keith Murray did not have any history of heart problems or exhibit any symptoms which indicated any type of heart related conditions.
 5. Prior to October 4, 2005, I never told Michael K. Murray not to drive any motor vehicle, and there was no medical reason to restrict his driving of motor vehicles.
 * * * *Page 8 
 8. It is my opinion, to a reasonable degree of medical certainty, that Michael Keith Murray's suddenly losing vision while driving on October 4, 2005 and having a syncopal episode (fainting episode) was a result of cardiac arrhythmia; all of which was a result of his severe coronary artery disease which was asymptomatic until that moment. This situation and condition could not have been foreseen by Michael K. Murray. It is my further opinion, to a reasonable degree of medical certainty, that it was the coronary artery blockage that rendered Michael K. Murray unconscious, and Murray would have been unable to control his automobile while suffering this attack.
 {¶ 17} Moreover, in his own affidavit, Murray stated that prior "to October 4, 2005, [he had] never been treated for any heart related conditions." Alternatively, in their motion in opposition, the McCoys argued that Murray was "a time bomb" with a long history of high blood pressure, high cholesterol, non-compliance with medication, chest pains, and smoking. The McCoys presented the opinion of Dr. Stephen A. Rudolph, who had never treated Murray but reviewed his records. Rudolph opined that
 Mr. Murray thus had the following risk factors for coronary artery disease:
 Male, over age 40
 Hypertension
 Hypercholesterolemia with low HDL
 Tobacco abuse for 50 years
 Family history
 Non-compliance with cholesterol medication
 Of great significance is that in the setting of these risk factors, Mr. Murray had long standing symptoms typical for angina. Thus, his probability of having a clinically significant cardiac *Page 9 event, either myocardial infarction or arrhythmia, was extraordinarily high.
 I therefore conclude, with a reasonable degree of medical probability, that Mr. Murray's syncopal episode of Oct. 5, 2005 was not a "sudden medical emergency", but was the type of incident that was foreseeable and more than likely bound to happen given his multiple major coronary risk factors and clinical history of angina.
 {¶ 18} Moreover, Murray's medical records were submitted to the trial court which indicated a history of high blood pressure, high cholesterol, smoking, and a family history of heart disease. This court is unable to determine whether the records indicated that Murray was non-compliant with his doctor's order to take cholesterol medication.
 {¶ 19} On September 10, 2008 the trial court held a hearing on Murray's motion for summary judgment. The hearing consisted solely of argument on the motion between the parties' attorneys. The trial court entered its judgment on October 1, 2008 holding as follows:
 While certainly in hind-sight, Dr. Rudolph can determine that Defendant, Murray, was suffering from a number of risk factors predictive of coronary artery disease, it is undisputed that Mr. Murray had never previously lost consciousness as a result of his accumulated risk factors nor suffered any symptoms of the condition which required treatment. To the extent that Plaintiffs point to medical records indicating that Murray failed to take prescribed cholesterol medication as directed, it is well known that such medication is prophylactic, intended to reduce some unquantified risk of future problems and not medication directed to alleviating existing symptoms or treating an acute condition. Every individual who ultimately *Page 10 suffers from some debilitating attack will, in retrospect, have exhibited "risk factors" which any Monday morning quarterback can point to as making the episode foreseeable. This is not, in this court's view, sufficient to disregard the undisputed evidence as noted that Mr. Murray had never previously loss [sic] consciousness or suffered any symptomatology requiring treatment. Notwithstanding regular visits to his doctor, his activity had never been medically restricted nor, in this court's view, were the events leading to this crash legally foreseeable.
 If the defense of sudden medical emergency is available, and that question has been answered in the affirmative, it is clearly applicable in the instant case. Even construing the evidence before the court most strongly before the non-moving party, it is apparent that reasonable minds could reach but one conclusion and that conclusion is adverse to Plaintiff.
 {¶ 20} The present case presents a factual scenario very similar to that at issue in Roman. In Roman, the defendant suffered a fatal heart attack while driving, resulting in his own death and the death of other drivers. The Roman defendant had a prior medical history of heart disease, including a prior bypass surgery. Roman, 99 Ohio St.3d at 263. However, the defendant, in Roman, had not been advised not to drive and his physician had described his condition as stable.
 {¶ 21} In considering the foreseeability of the defendant's heart attack in Roman, the Ohio Supreme Court specifically rejected the argument that "a driver who operates a vehicle with knowledge of any medical condition should bear the risk of injuries that result from loss of consciousness or incapacitation due to the *Page 11 
condition. Appellants contend that assumption-of-the-risk principles should apply in a situation where a driver with a medical condition chooses to operate a vehicle." Roman, 99 Ohio St.3d at 271. In reviewing that argument, the Roman Court concluded that "[i]f we accept this argument, then only those defendants who have never had any inkling of any medical condition would be able to assert and prevail on the sudden-medical-emergency defense, and all other drivers would be precluded from relying on the defense." Id.
 {¶ 22} This Court finds the rationale of the Roman Court and the trial court in the present case persuasive. Although one can look at Murray's history as a smoker with high blood pressure and cholesterol, and a family history of heart disease and determine that he was bound to suffer a heart condition, it would have been impossible to predict how and when such a condition might occur. Moreover, there was nothing in Murray's history that would lead a reasonable person to believe they were in danger of suffering a loss of consciousness. While the McCoys make much of Murray's history, nothing indicated a known risk of losing consciousness. See Cincinnati Ins. Co. v. Allen, 2nd
Dist. No. 2007-CA-134, 2008-Ohio-3720 (Defendant with a history of lightheaded spells could not have foreseen that he would experience a total blackout while driving as he had never experienced such an incident in the past). *Page 12 
 {¶ 23} Accordingly, we find that the record demonstrates that there was no genuine issue of material fact with regards to the unforeseeable nature of Murray's unconsciousness. Therefore, the McCoys' assignment of error is overruled.
 {¶ 24} Based on the foregoing, the October 1, 2008 Judgment Entry of the Court of Common Pleas, Defiance County, Ohio granting summary judgment in favor of Defendants-Appellees is affirmed.
Judgment Affirmed
Preston, P.J. and Willamowski, J., concur. *Page 1